CITY OF PEERLESS PARK, Missouri,
Plaintiff/Appellant/Cross–
Respondent,

v.

William E. DENNIS, Defendant,

and

Central Holding Corporation,
Defendant/Respondent/Cross–
Appellant.

Nos. ED 77974, ED 78010.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 27, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 12, 2001.

Application to Transfer Denied
May 29, 2001.

Stanley J. Wallach, Jerome Wallach, St. Louis, MO, for appellant.

Charles A. Seigel, III, Michael A. Wolff, St. Louis, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

The City of Peerless Park (the City) appeals from a judgment apportioning the proceeds of a condemnation award for a parcel of land owned by William E. Dennis (Dennis) and leased to Central Holding Corporation (CHC). Dennis and the City settled their claim for Dennis's portion of the award and Dennis assigned his rights and interests in this matter to the City. The City contends the trial court erred in (1) awarding CHC a portion of the condemnation award based on CHC's unexercised option to purchase the land because that option to purchase is not a property interest, (2) admitting opinion testimony of the value of the option because the opinion was not reasonably reliable, and (3) calculating the compensation because the trial court should have deducted the rent owed for the remaining years of the lease and should have discounted for risk and entrepreneurial profit. CHC cross-appeals contending the trial court erred in (1) calculating the compensation because a discount rate should not have been applied, and (2) failing to award CHC the rental bonus value. We affirm in part and reverse and remand in part.

This appeal is a result of a condemnation proceeding instituted by the City to remedy blight and encourage redevelopment in the area. The affected parcel is 1.5 acres located in a floodplain near the intersection of I–44 and Highway 141. Dennis leased the property to CHC under a ten-year lease dated August 3, 1992. CHC used the lot as seasonal parking for a haunted house.

The lease contained an Option to Purchase and Right of First Refusal. The option provision states in pertinent part:

Tenant shall have the pre-emptive right during the term of this Lease to purchase said premises. The sale price shall be One Hundred Twenty Thousand Dollars ($120,000.00) if purchased within the first twelve months of this lease. The sale price shall escalate at the rate of 5% annually thereafter, throughout the term of this lease. Tenant shall give Landlord sixty (60) days written notice in advance of Tenant's intent to purchase. ...

Pursuant to the condemnation proceedings, Commissioners were appointed to determine the value of the property, and on July 22, 1998, they assessed the damages for the taking at $250,000. The City paid that amount into the registry of the court. Dennis and CHC each moved for distribution of the funds. The trial court conducted a hearing, heard evidence, and divided the assessed damages among the parties. The trial court awarded Dennis $209,429.05 and awarded CHC $40,570.95. Each party was also awarded the interest accrued on those amounts since the money had been deposited into the registry of the court. This appeal follows.

■ This court will affirm a judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In its first point, the City argues the trial court erred in awarding CHC a portion of the condemnation proceedings based on CHC's unexercised option to purchase the land because that option to purchase is not a property interest. CHC argues the option to purchase the property

is a valuable property right which if taken by eminent domain is compensable under Missouri Law. We agree with CHC.

The claim to compensation for condemnation is predicated on the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 26 of the Missouri Constitution of 1945. The Fifth Amendment guarantees that no person shall be deprived of property without due process of law, nor shall private property be taken for public use without just compensation. Under the Fourteenth Amendment, these protections apply to actions taken by the states. *Bi-State Development Agency of Missouri-Illinois Metropolitan Dist. v. Nikodem*, 859 S.W.2d 775, 778 (Mo.App. E.D.1993). Likewise, Article I, Section 10 of the Missouri Constitution provides that "no person shall be deprived of life, liberty or property without due process of law," and Article I, Section 26 requires that "private property shall not be taken for public use without just compensation."

The issue of whether an option to purchase property is a property right and is, therefore, compensable when the leased property is condemned is a question of first impression in Missouri. Our courts have established that not every person who can properly be designated a lessee is entitled to damages upon the taking of his interest in condemnation. *Bi-State*, 859 S.W.2d at 779. For example, one remaining in possession after a lease has expired by its own terms has no constitutional right to compensation despite evidence of mutual satisfaction by landlord and tenant supporting an expectation of renewal. *Id.* Likewise, one failing to execute a renewal of a lease on the terms specified therein prior to the expiration of the original term has no compensable interest in a condemnation award. *Id.*

A compensable interest in condemnation has been described as "[t]he interest held, the property for which compensation must be rendered, though not necessarily the corporeal thing itself, must consist of some definite right of domination in and over the physical thing, such as the right of use, or exclusion, or disposition." *Millhouse v. Drainage Dist. No. 48 of Dunklin County*, 304 S.W.2d 54, 58 (Mo. App.1957). A mere contractual relationship is not sufficient in itself. *Id.*

Both parties, in making their arguments, rely on *Land Clearance for Redevelopment Corp. v. Doernhoefer*, 389 S.W.2d 780 (Mo.1965). In that case, the lease at issue contained an option to renew the lease. *Id.* at 783. The court found the holder of an option to renew a lease has an interest in the land. *Id.* The right of renewal constitutes a part of the tenant's interest in the land, and forms a substantial and integral part of the agreement. *Id.* The tenant in that case was awarded a bonus value for the remainder of the term of the original lease and for the term of the new lease under the option. *Id.*

CHC argues this principle should be extended to options to purchase contained in a lease agreement. The City argues the court in *Doernhoefer* purposefully made a distinction between an unexercised option to purchase and unexercised option to renew a lease and thus, contends *Doernhoefer* should not be applied in this case. The court in *Doernhoefer* stated:

Lessors object that lessee did not exercise its option to renew, citing cases which hold that a lessee with an unexercised option *to purchase* is not entitled to compensation upon condemnation of the leased premises. Without approving or disapproving and assuming for the purpose of the argument that those cases were correctly decided, they are not analogous. The holder of an unexer-

cised option *to renew* a lease, having an interest in the land, is in a different position from that of the holder of an option to purchase who has *no interest in the land* before the exercise of the option.

*Doernhoefer*, 389 S.W.2d at 786 (emphasis added). We note the *Doernhoefer* court distinguishes these two situations in this dicta, but it does not explain the distinction or give any authority for the distinction. The parties do not cite and this court was unable to find any Missouri cases the *Doernhoefer* court obscurely referenced.

The City argues the reason for the difference in treatment of the option to ·purchase and the option to renew the lease are the different estates in land that are held. The City contends an option to renew a lease is a continuation of the estate already vested and should therefore be considered a vested property right. They also argue the option to purchase is an unaccepted offer to obtain an entirely different estate. We find this argument unpersuasive. An *option to renew* grants the privilege of creating a *new tenancy* upon the expiration of the original term. *State ex rel. State Highway Commission v. Demarco*, 445 S.W.2d 379, 385 (Mo.App.1969) (emphasis added). Based on this logic, an option to purchase and an option to renew both create new estates and new property rights.

We do not find the *Doernhoefer* distinction between options to purchase and options to renew authoritative or persuasive under these facts. There are several factors courts consider when determining if a lessee has a compensable interest in the condemnation award. The *Doernhoefer* court considered as a factor that the option was a part of the lease, part of the estate granted, and as much a part of the lease as any other element thus making it an interest in property. *Id.* at 785. Here, we find

the option to purchase provision was a part of the lease and was exchanged for valuable consideration.

The *Millhouse* court considered as a factor that the lessee must have some definite right of domination in and over the physical thing, such as the right of user, or exclusion, or disposition in order to have a compensable interest, thus making it an interest ·in property. *Millhouse*, 304 S.W.2d at 58. Here, CHC had the right to use the property. We also find CHC had a power of disposition over the property. If the market value of the property rose above the price fixed in the option, CHC would be able to purchase the property and upon purchase of the property, CHC could sell it to a third party and keep the profit. If the market value of the property fell below the price fixed in the option, CHC would be under no obligation to purchase the property. This too was presumably something the parties bargained for. Because CHC could buy the property at any time for a set price and then sell it to a third party at a profit, this demonstrates CHC had the power of disposition.

After considering these factors, we find the option to purchase here is a property interest. As further evidence that the parties intended for CHC to have a property interest we note the lease here had a provision concerning condemnation. That provision states in pertinent part:

> In the event the premises shall be taken by or pursuant to any governmental authority or through the exercise of the right of eminent domain, Lanlord and Tenant shall join and· cooperate in resisting such proceeding if such resistance is feasible and desirable, and if it is not, shall join and cooperate in prosecuting *their respective claims for damages* incurred from the successful exercise of such right or proceeding.

(Emphasis added.) The lease itself perceives both Dennis and CHC have compensable claims under the provisions of the lease if the property is taken by condemnation.

We further note, recent legal trends support the conclusion that the owner of an unexercised option to purchase land possesses a property right that is compensable in eminent domain, the measure of damages being the excess, if any, of the total award above the optioned purchase price. 2 Julius L. Sackman, *Nichols on Eminent Domain* Section 5.02[3][a] (2000).

We find an option to purchase contained in a lease for the property is a compensable interest in the property in a condemnation proceeding. The City's first point is denied.

We will next address the City's point three and CHC's two points together. Both the City and CHC argue the trial court erred in calculating the compensation. CHC further argues the trial court erred in failing to award CHC the rental bonus value. An option to purchase is a compensable interest in the property. The issue of value of the option and dividing the compensation is also an issue of first impression in Missouri.

Both parties argue the trial court erred in apportioning the condemnation award. We agree. Even though this is a case of first impression in Missouri, we find the division the court chose does not follow established principles of Missouri law. The trial court found the option would have been exercised at the end of the lease term in 2002. It then took the price CHC would have had to pay in 2002 and adjusted it to present-day dollars. It then subtracted that amount from the condemnation award. Dennis was awarded the adjusted option price and CHC was awarded the balance.

Condemnation of the entire property ordinarily terminates a lease by operation of law, divesting all rights of private property in the parcel and extinguishing any further obligation to pay rent. *Bi–State*, 859 S.W.2d at 780. The date of the taking is the date upon which the condemnor pays the commissioners' award into court. *State ex rel. Missouri Highway and Transp. Com'n v. Starling Plaza Partnership*, 832 S.W.2d 518, 520 (Mo. banc 1992). These are established principles of Missouri law.

At the trial below, counsel for Dennis pointed out that the taking of property extinguished the lease, including the option, citing *Bi–State*, 859 S.W.2d 775. Following that reasoning, the City now argues CHC should not receive compensation for an interest in land he never obtained. This argument, however, misconstrues *Bi–State*.

In *Bi–State*, the lease terms specifically provided for the termination of the lease upon condemnation. *Id.* at 777. "...[t]his lease shall *terminate* and expire as of the date of such taking ...." *Id.* (Emphasis added.) Because the lease terminated by operation of the lease language, the lessee was not entitled to part of the condemnation award. *Id.* at 779–780. Absent a termination clause, the lease terminates because the leasehold interest has been appropriated for public use, thus giving rise to a right of compensation. *Id.* at 780.

Here, the terms of the lease do not call for termination of the lease upon condemnation of the property. Instead, the terms of the lease here provide that "...all obligations of its Tenant shall cease upon the date of the taking...." The use of the word "obligations" here does not indicate an intent that the lease terminate, only an

intent that lessee have no further obligation to pay rent in the event of condemnation. We find the lease did not terminate by operation of the lease language, but by operation of law and this gives rise to CHC's right of compensation.

However, the trial court erred in prospectively considering the option to purchase because an option to purchase cannot be prospectively exercised after the lease has terminated. The lease terminated on the date of the condemnation which was the day the City paid the Commissioners' award into the registry of the court. We find the award must be divided as of the day of condemnation.

■ In arriving at just compensation in condemnation proceedings, the damages awarded must be definite and certain; they are not to be based upon contingent, speculative and remote possibilities, but upon considerations of reasonable probability; the damages awarded should be those reasonably to be expected from the taking. *Doernhoefer*, 389 S.W.2d at 786. In *Doernhoefer*, the court found there was more than a reasonable probability—that it was practically a certainty—that lessee would have exercised its option to renew the lease before the deadline. *Id.* at 787. The *Doernhoefer* court stated that lessee had until February 28, 1970, to exercise the option and its right to do so was terminated by the condemnation proceedings. *Id.* Under these circumstances, the court found, the non-exercise of the option is immaterial; lessee is not to be denied the benefit of its bargain for not having given notice in writing of its intention to renew the lease, where its right to give such notice was cut off by the condemnation proceedings. *Id.*

We agree with the *Doernhoefer* court's analysis on this point and apply it here. We must assume that because the market value of the property was greater than the option price, CHC would have exercised the option on the day of condemnation. CHC further stated they wanted to exercise the option to purchase. We find the City should be awarded the value of the option price on the day of condemnation, and CHC should be awarded the difference between the option price and the condemnation award.[1]

CHC also complains about not receiving bonus value for the remainder of the term of the lease. Because we hold the option was exercised on the day of condemnation, and the lease was terminated because of the condemnation and the purchase, no future rent is owed and no bonus value of rent need be calculated.

Because of our disposition of the above points and because under our formula for division of the award, the value of the option is set in the lease and expert testimony is immaterial, we do not need to reach City's other point.

We remand to the trial court to enter judgment following the above guidelines. Interest should then be apportioned in proportion to the amounts received. Judgment affirmed in part and reversed and remanded in part.

MARY RHODES RUSSELL and
RICHARD B. TEITELMAN, JJ., concur.

---

1. We limit these principles for these computations to these particular facts involving an option to purchase that could be exercised at any time during the lease.